1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ELECTRONIC RECYCLERS                    No.  1:14-CV-01352-KJM-SMS
    INTERNATIONAL, INC.,
12
                    Plaintiff,
13                                          ORDER

14         v.

15  CALBAG METALS CO. and DOES 1 to
    100, inclusive,
16
                    Defendants.
17

18

19         Electronic Recyclers International, Inc. (ERI) has sued Calbag Metals Co.,

20  alleging Calbag did not pay for shipments of recycled metal as promised.  Calbag has argued in

21  response that it is not subject to this court's personal jurisdiction, or at least that the case should

22  be transferred to Washington or Oregon.  The court previously granted Calbag's motion to strike

23  ERI's untimely opposition.  Order Mar. 6, 2015, ECF No. 28.  After considering Calbag's

24  briefing, the court decides the motion without a hearing, and denies the motion to dismiss or

25  transfer.

26  I.      BACKGROUND

27         The complaint includes the following allegations: ERI is a Delaware company

28  with its principal place of business in Fresno, California.  Compl. ¶ 2, ECF No. 1.  It is the

                                        1

1   plaintiff here and makes the following allegations:  ERI produces and sells various grades of

2   copper and scrap metal.  *Id.* ¶ 10a.  Calbag was one of ERI's customers.  *Id.*  Calbag is an Oregon

3   corporation with its principal place of business in Oregon.  *Id.* ¶ 2.  In November 2012, Jason

4   Carter of ERI solicited an offer to purchase scrap metal from Joshua Mauk of Calbag.  *Id.* ¶ 10b.

5   The two agreed on a price and delivery date, and soon they were in business.  *Id.*  Their

6   relationship continued through October 2013: ERI would contact Calbag, solicit an offer; Calbag

7   would respond with an offer, which ERI could accept or reject; and if ERI accepted, Calbag wired

8   money and picked up the metal.  *Id.* ¶ 10c.

9          In about October 2013, ERI accepted another Calbag offer, in this instance to buy

10  twenty loads of material.  *Id.* ¶ 11a.  After Calbag picked up these loads, it expressed

11  dissatisfaction with the quality of scrap delivered and refused to pay the previously agreed price.

12  *Id.* ¶ 11b.  Carter and Mauk could not reach a resolution, *id.* ¶ 11c, and in January 2014 another

13  Calbag representative, Jim Perris, met with ERI to discuss Calbag's objections, *id.* ¶ 11g.  The

14  discussions were not fruitful, and in ERI's estimation, Calbag has not paid $101,154.01 it owes

15  under the parties' agreement.  *Id.* ¶ 11j.

16         ERI brought this action against Calbag based on the court's diversity jurisdiction.

17  *Id.* ¶ 2.  Venue is proper, it alleges, because "[a] substantial part of the events and omissions

18  giving rise to the claims in this Complaint occurred in Fresno, California."  *Id.* ¶ 3.  The

19  complaint lists five claims, all under state law: (1) breach of contract, (2) fraud, (3) negligent

20  misrepresentation, (4) breach of the covenant of good faith and fair dealing, and (5) violation of

21  section 17200 of the California Business and Professions Code.  *Id.* ¶¶ 12–36.  ERI seeks

22  damages and other costs.  *Id.* at 10:2–9.

23         On October 29, 2014, Calbag filed the pending motion to dismiss for lack of

24  personal jurisdiction or, in the alternative, to transfer to the Western District of Washington or the

25  District of Oregon.  Def.'s Mot. Dismiss (Mot.) 1-2, ECF No. 8; Def.'s Mem. P.&A. Mot.

26  Dismiss (Mem.) 1:18–26, ECF No. 8-1.  Calbag noticed a hearing on December 3, 2014.  *Id.*  The

27  hearing was reset for December 5, 2014, after assignment to the undersigned.  Minute Order, ECF

28  No. 13.  ERI did not file a timely opposition or statement of non-opposition.  On December 22,

1   2014, the court ordered ERI to file an opposition within twenty-one days or risk dismissal or

2   transfer.  Order Dec. 22, 2014, ECF No. 16.  On January 13, 2015, twenty-two days later, ERI

3   filed an untimely opposition.  Opp'n Mot. Dismiss, ECF No. 17.  As noted, Calbag's motion to

4   strike ERI's untimely opposition was granted, after briefing and a hearing.  Order Mar. 6, 2015,

5   ECF No. 28.

6   II.      PERSONAL JURISDICTION

7            Although Calbag's motion now faces no opposition, the court's duty remains to

8   consider its underlying merits.  *See Knapp v. Cate*, No. 08-1779, 2013 WL 5466641, at *3 (E.D.

9   Cal. Sept. 30, 2013).

10           A defendant may move to dismiss a complaint for lack of personal jurisdiction.

11  Fed. R. Civ. P. 12(b)(2).  Even though the defendant makes a motion under Rule 12(b)(2), it is the

12  plaintiff's burden to establish the court's personal jurisdiction.  *See Sher v. Johnson*, 911 F.2d

13  1357, 1361 (9th Cir. 1990).  When, as here, the court acts without holding an evidentiary hearing,

14  "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion

15  to dismiss."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In other words, "the plaintiff

16  need only demonstrate facts that if true would support jurisdiction over the defendant."  *Id.*  The

17  plaintiff may not rely on "bare allegations" alone, *Schwarzenegger v. Fred Martin Motor Co.*,

18  374 F.3d 797, 800 (9th Cir. 2004), but the court assumes the complaint's allegations are true

19  unless "directly contravened" by other evidence, *Harris Rutsky & Co. Ins. Servs. v. Bell &

20  Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Any factual conflicts are resolved in the

21  plaintiffs' favor.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam).

22           When no federal statute governing personal jurisdiction applies, the district court

23  applies the law of the state in which it sits, here California.  *Schwarzenegger*, 374 F.3d at 800

24  (citing Fed. R. Civ. P. 4(k)(1)(A)).  Calbag is not a resident of California, so the court looks to

25  California's long-arm statute, which is "coextensive with federal due process requirements."

26  *Schwarzenegger*, 374 F.3d at 800-01; *see* Cal. Code. Civ. P. § 410.10.  Federal due process

27  requires some "minimum contacts" between the defendant and the relevant forum so that the

28  /////

1  court's exercise of personal jurisdiction "does not offend traditional notions of fair play and

2  substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation

3  marks and citation omitted).

4         The court may exercise either general or specific personal jurisdiction over a non-

5  resident defendant. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9

6  (1984).  A corporation's principal place of business and place of incorporation are the paradigm

7  justifications for an exercise of general personal jurisdiction. *Daimler AG v. Bauman*, ___ U.S.

8  ___, 134 S. Ct. 746, 760 (2014).  Theoretically, a corporate defendant may be subject to general

9  personal jurisdiction outside of the location of its principal place of business and state of

10  incorporation, but if so its contacts with the forum state must be "so 'continuous and systematic'

11  as to render [it] essentially at home in the forum State." *Id.* at 761 (quoting *Goodyear Dunlop*

12  *Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011)) (alterations in

13  *Daimler*).  No such continuous and systematic contacts subject Calbag to general personal

14  jurisdiction in California.  It is an Oregon corporation doing business principally in Oregon, and

15  ERI has established no evidence to show Calbag is anything more than a purchaser of California

16  scrap metal.

17         Specific personal jurisdiction requires a lesser showing of Calbag's California

18  contacts, but to subject it to the jurisdiction of this court, ERI's alleged injuries must have a

19  logical relation to those contacts.  The test for specific personal jurisdiction has three parts: first,

20  ERI must show that Calbag purposefully directed its activities at California or purposefully

21  availed itself of the California forum; second, ERI must show that its claim arises out of or is

22  related to those activities; and third, if ERI makes this showing, the burden shifts to Calbag to

23  show that exercise of personal jurisdiction would be unreasonable or unfair. *Schwarzenegger*,

24  374 F.3d at 802.

25       A.    Purposeful Availment

26         The first part of the test requires the defendants' "purposeful availment" of the

27  forum. *Id.*  ERI must show Calbag "(1) committed an intentional act, (2) expressly aimed at the

28  forum state, (3) causing harm that [Calbag] knows is likely to be suffered in the forum state." *Id.*

4

1    at 803 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  Calbag need

2    not have any physical contact or presence within the forum state.  *Burger King Corp. v.*

3    *Rudzewicz*, 471 U.S. 462, 476 (1985).  But ERI cannot adequately allege purposeful availment by

4    the mere fact Calbag could foresee its intentional acts would have an effect in the forum state.

5    *Schwarzenegger*, 674 F.3 at 804–05; *see also Calder v. Jones*, 465 U.S. 783, 789 (1984).

6    "Something more" than foreseeability is required.  *Id.*  As every first year law student learns, due

7    process requires "the defendant's conduct and connection with the forum state are such that he

8    should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v.*

9    *Woodson*, 444 U.S. 286, 297 (1980).  The inquiry is contextual.  *See Schwarzenegger*, 374 F.3 at

10   807.

11        This case is at its roots a dispute over the parties' October 2013 agreement to

12   purchase and sell recycled metal; any link between Calbag and California stems from those roots.

13   ERI alleges its representative, Jason Carter, initiated the parties' relationship and that Carter also

14   solicited each later purchase when he contacted Mauk to request an offer.  Compl. ¶¶ 10b, c.  ERI

15   may not establish personal jurisdiction with evidence of its unilateral acts to engage Calbag in

16   business.  *Burger King*, 471 U.S. at 474–76.  But if Calbag deliberately created obligations

17   between itself and ERI, it should reasonably expect ERI to depend on California law to protect

18   itself:  "[W]here the defendant deliberately has engaged in significant activities within a State, or

19   has created continuing obligations between himself and residents of the forum, he manifestly has

20   availed himself of the privilege of conducting business there, and because his activities are

21   shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable

22   to require him to submit to the burdens of litigation in that forum as well."  *Id.* at 475–76

23   (citations and internal quotation marks omitted).

24        ERI alleges, and Calbag does not dispute, that Calbag received ERI's request to

25   make an offer to purchase scrap metal in November 2012.  Calbag was under no obligation to act

26   on ERI's request, but it did.  The parties also agree that between November 2012 and October

27   2013, ERI made additional requests for offers, and Calbag acted on those requests.  By

28   voluntarily and intentionally offering to purchase scrap metal from a corporation with its principal

place of business in California, Calbag made a contract lawsuit in California anything but "random" and "fortuitous." *Burger King*, 471 U.S. at 480 (citations and internal quotation marks omitted). By voluntarily contracting with a corporation whose principal place of business is inside California, knowing the contract would be performed in part in California, Calbag should "reasonably anticipate being haled into court" in California. *World-Wide Volkswagen*, 444 U.S. at 297. Calbag purposefully availed itself of this forum.

> B.   The "But-For" Test

The second part of the test for specific personal jurisdiction focuses on the connection between the defendant's acts and the harm those acts caused. It requires the plaintiff show the claim would not have arisen but for the defendant's contacts with California. *Ballard*, 65 F.3d at 1500 ("The question . . . is this: but for [the defendant's] contacts with [the forum], would [the plaintiff's] claims against the [defendant] have arisen?"). Other decisions have articulated the test as requiring a "direct nexus" between the defendant's contacts with the forum and the cause of action. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).

Despite the apparently strict language of the but-for test, the Ninth Circuit has not applied the test stringently. *See, e.g., MCA Records, Inc. v. Charly Records, Ltd*, 108 F.3d 338, 1997 WL 76173, at *5 (9th Cir. Feb. 21, 1997) (unpublished memorandum) ("Because some of the advertisement and sales activity was directed to California, [the plaintiff's] claims arise out of this forum-related activity."); *see also Planned Parenthood v. Am. Coalition of Life Activists*, 945 F. Supp. 1355, 1368 (D. Or. 1996) ("The 'but for' test should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum.") (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).

Whether a stricter or more lenient interpretation of *Ballard's* but-for test is appropriate, Calbag's alleged contacts satisfy both versions. ERI would not have delivered scrap metal to Calbag had Calbag not offered to purchase that metal. The center of the parties' dispute is their business relationship and their oral agreements to purchase and sell scrap metal. Had

1  Calbag not made any offer, had the parties not agreed at all, and had Calbag's contacts with ERI

2  not been made, ERI would have had no cause to file its complaint, because the parties could not

3  have disagreed about the appropriate price.

4          C.      Reasonableness

5          Having found Calbag's contacts were sufficient and that they caused the alleged

6  injuries, the third part of the test requires a broad inquiry into the overall reasonableness and

7  fairness of exercising personal jurisdiction. *See Ballard*, 65 F.3d at 1500–02. The court

8  considers, among other things, "(1) the extent of a defendant's purposeful interjection; (2) the

9  burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty

10  of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most

11  efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's

12  interest in convenient and effective relief; and (7) the existence of an alternative forum."

13  *Panavision Int'l LP v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citing *Burger King*,

14  471 U.S. at 476–77)). The defendant's burden is to present a "compelling case" of the

15  unreasonableness of personal jurisdiction over it. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th

16  Cir. 2008).

17          The first factor weighs in Calbag's favor. Its contacts are limited to its agreements

18  with ERI. The scrap was delivered to destinations outside California, Calbag determined to make

19  a payment of less than the agreed price outside California, and ERI sent representatives to

20  Washington to evaluate alleged deficiencies in the scrap. Perris Decl. ¶ 6, ECF No. 8-2. The

21  second factor weighs in Calbag's favor as well. It is an Oregon corporation with its principal

22  place of business in Oregon and has no physical presence in California. The third factor does not

23  favor Calbag. It has not described how Oregon's or Washington's sovereignty is implicated here

24  at all. The fourth factor does not favor any party more than the other, as one is a resident of

25  California and the other of Oregon, neither having a greater interest in this case than the other.

26  The fifth factor may favor either party as well. Although Calbag's personnel and files are in

27  Washington and Oregon, ERI's are in California. No party has pointed out a related case or

28  dispute in Washington, Oregon or California that would suggest concurrent, duplicative litigation.

1   The sixth factor favors ERI.  It is a resident of this forum.  It has selected this forum and

2   described causes of action particular to California law, for example under California Business and

3   Professions Code section 17200.  The seventh factor weighs in Calbag's favor, although not

4   compellingly.  A federal district court in Washington or Oregon would provide it an equivalently

5   just and equitable venue for its defense as will this one.  In sum, the first, second and seventh

6   factors weigh in Calbag's favor, none strongly, and the other factors do not.  This is not the

7   required "compelling case." *Boschetto*, 539 F.3d at 1016.  This court may exercise personal

8   jurisdiction over ERI's claims against Calbag.

9   III.   VENUE

10          A district court may dismiss or transfer a case "to any district or division in which

11   it could have been brought" if venue is "wrong."  28 U.S.C. § 1406(a).  Section 1391 of Title 28

12   provides rules of general applicability for venue: "A civil action may be brought in . . . a judicial

13   district in which any defendant resides, if all defendants are residents of the State in which the

14   district is located."  28 U.S.C. § 1391(b).  ERI has named only Calbag as a defendant, so venue is

15   proper in any state in which Calbag is a resident.[1]  Section 1391 also provides that a defendant

16   corporation "with the capacity to sue and be sued in its common name under applicable law . . .

17   shall be deemed to reside . . . in any judicial district in which such defendant is subject to the

18   court's personal jurisdiction with respect to the civil action in question . . . ."  *Id.* § 1391(c).

19   Finally, in states like California, which has more than one judicial district, and in which a

20   defendant corporation "is subject to personal jurisdiction at the time an action is commenced,"

21   that defendant "shall be deemed to reside in any district in that State within which its contacts

22   would be sufficient to subject it to personal jurisdiction if that district were a separate State."  *Id.*

23   § 1391(d).  Because ERI has its principal place of business within this district, the preceding

24   jurisdictional analysis applies equally well when restricted to this district, and venue is proper.

25          [1] ERI has also named several unknown fictitious defendants.  Without information about
these unknown defendants' nature, residences, contacts, and other information, the court declines
26   to dismiss or transfer this action on the basis of their residency.  *Cf. Liberty Media Holdings,*
*LLC v. Does 1-62*, No. 11-575, 2012 WL 628309, at *8 (S.D. Cal. Feb. 24, 2012) (denying the
27   doe defendants' § 1406(a) motions "without information regarding [their] connections, or lack
thereof, to California").
28

1    Because venue is proper in this district, the court declines to transfer or dismiss the case under

2    § 1406(a).

3    IV.    TRANSFER

4           Section 1404 of Title 28 gives district courts discretion "to adjudicate motions for

5    transfer according to an 'individualized, case-by-case consideration of convenience and

6    fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v.*

7    *Barrack*, 376 U.S. 612, 622 (1964)).  To describe this "individualized, case-by-case

8    consideration," the Ninth Circuit has suggested a non-exclusive list of wide-ranging public and

9    private factors.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  "For

10   example, the court may consider (1) the location where the relevant agreements were negotiated

11   and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice

12   of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the

13   plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the

14   two forums, (7) the availability of compulsory process to compel attendance of unwilling non-

15   party witnesses, . . . (8) the ease of access to sources of proof," (9) "the presence of a forum

16   selection clause," if any, and (10) "the relevant public policy of the forum state, if any."  *Id.*

17          On balance this district is a relatively convenient, fair, and reasonable choice of

18   forum.  No choice of forum clause requires a transfer.  The plaintiff operates its business out of

19   this district, negotiated the oral contract at issue here from this district, has pleaded claims under

20   California law, and chose this forum to file its complaint.  Nothing before the court allows it to

21   conclude that litigation in this district would be more expensive than in Washington or Oregon.

22   Whether in Oregon, Washington or California, discovery will most likely require production of

23   documents and deposition of witnesses in another state.  Calbag has not introduced evidence or

24   argued that litigation in this district will negatively implicate one or another state's public policy.

25   And although this district's docket is congested, the median time from filing to disposition of

26   /////

27   /////

28   /////

9

civil cases is similar in comparison to the District of Oregon and the Western District of Washington.[2]

V.   CONCLUSION

Calbag's motion to dismiss or transfer is DENIED.

IT IS SO ORDERED.

DATED:  April 1, 2015.

_____
UNITED STATES DISTRICT JUDGE

_____

[2] On its own motion, the court takes judicial notice of publicly available Federal Court Management Statistics published by the Administrative Office of the Courts.  *See* Administrative Office of the Courts, *Federal Court Management Statistics December 2014: District Courts*, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-december-2014.aspx.  Those cases reflect not only this court's caseload burden, but also its high productivity rating.  In civil cases, for the twelve-month period ending December 31, 2014, the median time from filing to disposition in this District was 7.9 months.  The time was 11.1 months in the District of Oregon and 7.4 months in the Western District of Washington.